IN RE: INQUIRY CONCERNING A JUDGE, NO. 104 STAFFORD GOVERNOR
BULLOCK, RESPONDENT

No. 84A88

(Filed 5 April 1989)

**Judges § 7— judge's conduct toward witness—discipline not warranted**

A district court judge's outbursts toward an arresting officer in a case
tried by the judge, which occurred in the privacy of the judge's office, were
not so egregious so as to amount to conduct prejudicial to the administration
of justice that brings the judicial office into disrepute within the meaning of
N.C.G.S. § 7A-376.

THIS matter is before the Court upon a recommendation by
the Judicial Standards Commission (Commission), filed with the
Court on 29 February 1988, that Judge Stafford G. Bullock, a
Judge of the General Court of Justice, District Court Division,
Tenth Judicial District of the State of North Carolina, be cen-
sured for conduct prejudicial to the administration of justice that
brings the judicial office into disrepute, in violation of Canons 2A
and 3A(3) of the North Carolina Code of Judicial Conduct. Heard
in the Supreme Court on 12 September 1988.

*James J. Coman, Senior Deputy Attorney General, Special
Counsel for the Judicial Standards Commission.*

*Womble, Carlyle, Sandridge & Rice, by G. Eugene Boyce;
Bass, Powell & Bryant, by Gerald L. Bass, for respondent.*

ORDER REJECTING CENSURE.

After reviewing the evidence adduced at the hearing before
the Commission, this Court concludes that respondent's conduct
in question in these proceedings may be described as follows:

During the trial of a driving-while-intoxicated case on 24
June 1986, respondent, who was presiding, and the arresting of-
ficer, Jeffrey A. Karpovich, differed concerning the officer's re-
sponsibility in connection with having a blood test administered
to the defendant. Ultimately Karpovich, realizing, according to his
testimony before the Commission, that "I was not getting any-
where, and to me it was a moot point . . . finally just said [to re-
spondent], 'I'm sorry, I must have misunderstood you,' just to get

over with that issue." Thereafter respondent recessed court for lunch.

While respondent and others, including Karpovich, were preparing to leave the courtroom, Karpovich was engaged in conversation by a fellow officer, G. R. Passley, who had heard the colloquy which had earlier taken place between the respondent and Karpovich. Passley expressed his agreement with Karpovich's position on the question of an arresting officer's responsibility to accord an arrestee a blood test. The evidence differs somewhat as to Karpovich's precise response to Passley; but according to Passley, who testified for the Commission, Karpovich said in a voice "loud enough for people in the courtroom to hear" and which "got everybody's attention" the following: "I know that. What do you want me to do, go over there and slap him?" [Karpovich testified that his remark to Passley was, "I know it's not our responsibility. But what did you want me to do, slap him?"] Respondent overheard Karpovich say to Passley, "Do you want me to slap him" or "do you want me to slap him up side his head."

Passley, realizing that respondent had overheard Karpovich's comment, started for the door because, as he testified, "a statement like that, being in law enforcement fourteen years, it was just sort of smart to leave. The less I heard, the less I get involved."

Respondent approached Passley in the lobby outside the courtroom to ask what Karpovich had said and to whom Karpovich was referring when he said it. Passley testified that respondent "asked me was Karpovich talking about him or what statement did Karpovich make and it was in relation to Karpovich saying he wanted to slap him. And then I told him, 'yes he did say it but he was talking to me.' That's the best I can remember."

Respondent then located Karpovich, who was in a corridor walking toward the elevators, and directed him to come to respondent's chambers. Respondent's chambers being occupied, he and Karpovich remained in the anteroom adjacent to respondent's chambers, where some privacy was available. After closing the door respondent said to Karpovich, "If you want to slap me, there's no better time to do it than right now." Karpovich responded, "I didn't say I wanted to slap you." Karpovich tried to

explain to respondent what, in fact, he had said. Respondent, believing that he, himself, had heard what Karpovich had said and having had his belief confirmed by Passley, refused to listen to Karpovich's explanation, which appeared to respondent to be contrary to what respondent overheard.

Respondent asked Karpovich to leave the office. He three times [according to Karpovich's testimony] or four or five times [according to respondent's testimony] asked Karpovich to leave. Karpovich continued to try to explain his position to respondent. Respondent physically took hold of Karpovich by his upper arm or shoulder and escorted him out of the office, shutting the door behind him, after Karpovich, at respondent's request, removed his foot from the doorsill.

After careful consideration, we conclude respondent's conduct, while not the most propitious and even if characterized as intemperate, is, nevertheless, not so egregious as to amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute within the meaning of N.C.G.S. § 7A-376. Not every intemperate outburst of a judge, especially when it is an isolated, single event, occurring in the privacy of the judge's office and brought on by what the judge might reasonably have perceived to be some provocation, amounts to conduct deserving of discipline. To rule otherwise would be asking judges to be more than they can be; it would be asking them to be more than human. We think respondent's outbursts toward Karpovich fall in the category of those not deserving of discipline. The Court, accordingly, rejects the recommendation of the Commission that respondent be censured.

Now, therefore, it is, pursuant to N.C.G.S. § 7A-376, -377 and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, ordered that the recommendation of the Commission that Judge Stafford G. Bullock be censured be and it is hereby rejected.

Done by the Court in conference this the 5th day of April 1989.

WHICHARD, J.
For the Court