IN RE: INQUIRY CONCERNING A JUDGE, NOS. 09-013, 09-018 AND 09-029
WILLIAM I. BELK, RESPONDENT

No. 464A09

(Filed 15 April 2010)

## 1. Judges— discipline—recusal of Chair of Judicial Standards Commission not required

The Chair of the Judicial Standards Commission was not required to recuse himself from a hearing conducted before the Commission even though respondent judge sent the Chair a letter requesting the opportunity to discuss respondent's service on a corporation's board of directors and the Chair sent a letter in response indicating that further meetings would not be of assistance in resolving the situation because: (1) the letter was transmitted after respondent had already been advised that his continuing service on a corporate board violated Canon 5C(2) of the North Carolina Code of Judicial Conduct; (2) the letter did not demonstrate bias, especially since the Supreme Court, and not the Commission, creates and interprets the Code; and (3) if bias could be contrived by the mere act of sending a letter to a member of the Commission and receiving a response, then it is fore-

seeable that a judge could send letters to each member of the hearing panel to create the appearance of bias.

**2. Judges— discipline—findings of fact—clear, cogent, and convincing evidence**

Although respondent contends the entire proceeding should be dismissed based on the Judicial Standards Commission's alleged failure to make findings of fact based on clear, cogent and convincing evidence, a review of the record and the transcript revealed that the Commission applied the proper standard.

**3. Judges— service as corporate director—mandatory prohibition**

The prohibition in N.C. Code of Judicial Conduct Canon 5C(2) against a judge serving as a corporate director is not merely a "suggestion or guide" but is mandatory.

**4. Judges— discipline—jurisdiction—intentional misrepresentations—absence of formal charge—due process**

The Judicial Standards Commission did not lack jurisdiction to discipline respondent for alleged misrepresentations he made during the Commission's investigation because the statement of charges did not allege intentional misrepresentation. While the better practice would have been for the Commission to file an amended statement of charges to conform to the evidence, the Commission's finding without a formal charge that respondent misrepresented himself did not violate respondent's due process rights since it offered him the opportunity to explain the misleading statements during the hearing.

**5. Judges— discipline—confrontation with chief district court judge—sufficiency of basis**

Respondent district court judge's inappropriate words and actions during a confrontation with the chief district court judge did not violate the Canons of the Code of Judicial Conduct and did not constitute a basis for discipline.

**6. Judges— discipline—service on corporate board of directors—removal from office**

A district court judge was removed from office for violations of Canons 1, 2A, and 5C(2) of the Code of Judicial Conduct and N.C.G.S. § 7A-376(b) based upon his failure to resign from a corporate board of directors even though he had been informed prior to the time he took the oath of office that his membership

**IN RE BELK**

[364 N.C. 114 (2010)]

on the board violated Canon 5C(2), his intentional misrepresentation of the reasons for his continued membership on the board during the Judicial Standards Commission's investigation, and his continued service on the board at the time of the hearing more than nine months after his installation to office.

Chief Justice PARKER did not participate in the consideration or decision of this case.

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and 7A-377 upon a recommendation by the Judicial Standards Commission entered 21 October 2009 that respondent William I. Belk, a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-Six of the State of North Carolina, be removed for conduct in violation of Canons 1, 2A, 3A(3), and 5C(2) of the North Carolina Code of Judicial Conduct and for willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Heard in the Supreme Court 17 February 2010.

*Nancy A. Vecchia, Counsel for the Judicial Standards Commission.*

*Kevin P. Byrnes for respondent-appellant.*

PER CURIAM.

On 23 January 2009 and 11 February 2009, complaints were filed with the Judicial Standards Commission (Commission) alleging misconduct by Respondent. On 7 April 2009, the Commission filed a verified statement of charges alleging Respondent, William I. Belk, violated Canons 1, 2A, 3A(3), and 5C(2) of the North Carolina Code of Judicial Conduct (the Code) and N.C.G.S. § 7A-376(b). The Commission based the charges on Respondent's continued service as a director of Sonic Automotive, Inc. (Sonic) and director emeritus of Monroe Hardware Company (Monroe)[1] from 1 January 2009 through 7 April 2009 as well as Respondent's actions during a confrontation with Chief District Court Judge Lisa C. Bell on 6 February 2009. On 1 May 2009, Respondent filed a document entitled "Answers, Response and Defenses." The Commission conducted hearings on 10 September and 30 September 2009.

---

1. The Commission later abandoned Respondent's service on the Monroe Board as a basis for discipline because it found that his duties as director emeritus did not actually involve any responsibilities of a corporate director.

**IN RE BELK**

[364 N.C. 114 (2010)]

The Commission made the following findings of fact, conclusions of law, and recommendation:

## FINDINGS OF FACT

1. William I. Belk was at all times referred to herein and is now a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-six, and as such is subject to the Canons of the North Carolina Code of Judicial Conduct, the laws of the State of North Carolina, and the provisions of the oath of office for a district court judge set forth in the North Carolina General Statutes, Chapter 11.

2. Respondent was elected a district court judge in the 4 November 2008 general election. On or about Friday, 5 December 2008, respondent attended a judicial education program for newly elected district court judges at the University of North Carolina School of Government in Chapel Hill, N.C. As a part of the educational program, Commission Executive Director Paul R. Ross and District Court Judge Rebecca Knight presented a two-hour session concerning ethical considerations for judges generally, and more specifically, the provisions of the North Carolina Code of Judicial Conduct, including the provisions of Canon 5 C.(2). During the program, respondent raised questions and concerns as to whether he could continue to serve as a member of various corporate boards of directors. Mr. Ross advised respondent that Canon 5 C.(2) prohibited a judge from serving as an officer, manager, or director of any business. Following the program, Mr. Ross and respondent had lunch together, at which time they continued their discussion with respect to respondent's ability to continue his service on corporate boards of directors. Respondent expressed his disagreement with the advice rendered by Mr. Ross.

3. Approximately one week later, Mr. Ross received a letter from respondent in which respondent continued to question the provisions of Canon 5 C.(2) and advance his argument that his service on the board of directors of a corporation which he identified as "Sonic Auto" would create no conflict with his responsibilities as a district court judge. Respondent sent a copy of the letter to Commission chairman Judge John C. Martin.

4. On or about 16 December 2008, Judge Martin responded to respondent reiterating the advice that Canon 5 C.(2) prohibited a

judge from service as an officer, director, or manager of any business, and informing respondent that the Commission had no authority to waive any provision of the Code of Judicial Conduct as it is promulgated by the North Carolina Supreme Court.

5. On or about19 [sic] December 2008, respondent wrote a letter to North Carolina Supreme Court Chief Justice Sarah E. Parker requesting that the Court amend the provisions of Canon 5 C.(2).

6. Respondent took the oath of office as a judge of the District Court Division of the General Court of Justice on 1 January 2009.

7. On or about 15 January 2009, respondent was notified by letter from Christie Speir Cameron, Clerk of the Supreme Court of North Carolina, that the Court had denied his request to amend Canon 5 C.(2) of the North Carolina Code of Judicial Conduct.

8. Sonic Automotive, Inc. is a publicly traded corporation incorporated under the laws of the State of Delaware. Sonic Automotive, Inc. owns automobile dealerships in approximately fifteen states, including North Carolina, and has its headquarters in Charlotte, North Carolina. Respondent has been a member of the Board of Directors of Sonic Automotive, Inc. since 1998, and has been "Lead Independent Director" since 2004, and serves on the audit committee and the compensation committee. According to the 8 April 2009 Annual Statement for the corporation, respondent's annual compensation for his services as a member of the Board of Directors of Sonic Automotive, Inc. for the year 2008 was approximately $143,500.

9. At all times from 1 January 2009 until the date of the hearing of the charges involved in this proceeding, respondent has continued to serve as a director of Sonic Automotive, Inc.

10. Prior to January 1, 2009, respondent was a member of the board of directors of Monroe Hardware Company. From 1 January 2009 until the present, respondent has continued to serve as "Director Emeritus" of Monroe Hardware Company and receives retirement compensation and medical insurance coverage from that corporation. The Commission does not find that there is clear and convincing evidence that respondent's position as "Director Emeritus" involves any responsibilities

as an officer, director, or manager or is anything more than an honorary position.

11. Upon being advised by Mr. Ross on 13 February 2009 of the initiation of the formal investigation of the complaints giving rise to these proceedings, respondent stated to Mr. Ross that he was continuing to serve as a director of Sonic Automotive, Inc. because he had a pre-existing medical condition and was provided with medical insurance by Sonic Automotive, Inc.

12. On 20 February 2009, respondent was interviewed by Commission Investigator Glenn Joyner. In the course of the interview, respondent told Mr. Joyner that Sonic Automotive, Inc. was the "source of [his] health insurance and [his] retirement."

13. Stephen K. Coss, General Counsel for Sonic Automotive, Inc., was interviewed by Mr. Joyner on 24 February 2009. Mr. Coss stated to Mr. Joyner that Sonic Automotive did not provide health insurance to respondent. After concluding the interview with Mr. Joyner, Mr. Coss called respondent and related to him the subjects about which Mr. Joyner had inquired.

14. On 25 February 2009, respondent called Mr. Joyner and told him that he received health insurance from Monroe Hardware Company, rather than Sonic Automotive, Inc., but that he had discussed with the Sonic directors the possibility of offering health insurance to its board members, who seemed receptive to the idea.

15. Sonic Automotive, Inc. did not in February 2009, and does not now, provide any medical insurance coverage for respondent.

16. The Commission finds that respondent's initial statements to Mr. Ross and Mr. Joyner with respect to Sonic Automotive, Inc.'s provision of health insurance were untrue and were intentionally made for the purpose of misleading the Commission in the investigation of this matter. The Commission further finds not credible respondent's explanation that he intended his statements to relate to his desire for Sonic Automotive, Inc. to provide him with health insurance at the conclusion of his judicial service.

17. Lisa C. Bell is the Chief Judge of the District Court Division, Judicial District Twenty-six, having been appointed as

**IN RE BELK**

[364 N.C. 114 (2010)]

Chief Judge by the Chief Justice of the North Carolina Supreme Court effective 1 January 2009.

18. On 4 February 2009, respondent submitted a request to Chief Judge Bell to be relieved of his court assignment on 11 February 2009 in order to attend a meeting of the Board of Directors of Sonic Automotive, Inc. On 6 February, Chief Judge Bell notified [respondent] that she had denied his request on the grounds that she had been told that the Commission had advised respondent that his "continued service on the Sonic board was not compliant with the Code of Judicial Conduct."

19. At approximately 4:10 p.m., respondent went to Chief Judge Bell's office to discuss her denial of his request. During the discussion, respondent became agitated and raised his voice, telling Chief Judge Bell that the issue of his service on the Sonic board was "none of her business," that the Commission had "leaked" the information to the press, and "this is all your fault." Chief Judge Bell asked respondent to leave her office and as he was doing so, he shouted at her that she was "a media hound" and a "political hack", that she had been "bought and paid for" by two named attorneys whom respondent said had orchestrated her appointment by the Chief Justice as chief district court judge so she could "screw him over," and that she should be ashamed. Respondent was standing very close to Chief Judge Bell in an intimidating manner, causing her to feel threatened and afraid, and shouted at her "you leave me the hell alone." Respondent's conduct occurred during business hours under such circumstances as to have been likely to have been heard by other court personnel and was, in fact, observed by Patricia Hines, a judicial assistant.

CONCLUSIONS OF LAW

Based on the foregoing findings of fact, each of which are made upon clear and convincing evidence, the Commission concludes:

1. Respondent's membership on the Board of Directors of Sonic Automotive, Inc. from and after 1 January 2009 to the date of the hearing in this matter was, and continues to be, in violation of the provisions of Canon 5 C.(2) of the North Carolina Code of Judicial Conduct.

**IN RE BELK**

[364 N.C. 114 (2010)]

2. Respondent's continuing membership on the Board of Directors of Sonic Automotive, Inc. after having been repeatedly advised that such conduct was not permitted by the Code of Judicial Conduct is in violation of Canon 1 and Canon 2 A. of the North Carolina Code of Judicial Conduct, is wilful misconduct while in office, and is conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

3. Respondent's intentional misrepresentations made to Mr. Ross and Mr. Joyner during the investigation of the allegations at issue in this proceeding, as found in Findings of Fact 11 through 16, are a violation of Canon 1 and Canon 2 A. of the North Carolina Code of Judicial Conduct and constitute wilful misconduct while in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

4. Respondent's conduct toward Chief Judge Bell, as found in Finding of Fact 19, constitutes a violation of Canon 1, Canon 2 A., and Canon 3 A.(3) of the North Carolina Code of Judicial Conduct and is wilful misconduct while in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

## RECOMMENDATION

Based on the foregoing findings of fact and conclusions of law, and after carefully considering the gravity of the violations as weighed against the evidence of good character produced by respondent, the Commission recommends to the Supreme Court of North Carolina that the respondent, William I. Belk, be removed from judicial office.

"The Commission serves 'as an arm of the Court to conduct hearings for the purpose of aiding the Supreme Court in determining whether a judge is unfit or unsuitable.' " *In re Tucker*, 348 N.C. 677, 679, 501 S.E.2d 67, 69 (1998) (citation omitted). "[F]inal authority to discipline judges lies solely with the Supreme Court." *In re Hayes*, 356 N.C. 389, 398, 584 S.E.2d 260, 266 (2002) (citation omitted). When reviewing the Commission's recommendations, "this Court acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court." *In re Daisy*, 359 N.C. 622, 623, 614 S.E.2d 529, 530 (2005) (citation omitted). "Upon recommendation of the Commission, the Supreme Court may censure, suspend, or remove any judge for wilful misconduct in office . . . or conduct prejudicial to the

administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-376(b) (2009). "A judge who is removed for any of the foregoing reasons shall receive *no retirement compensation* and is disqualified from holding further judicial office." *Id.*

Therefore, in reviewing the Commission's recommendations, this Court must "determine if the Commission's findings of fact are adequately supported by clear and convincing evidence." *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008). We next consider whether the findings of fact support the Commission's conclusions of law. *Id.* Finally, we decide whether the sanctions recommended by the Commission "are appropriate in light of the circumstances of the case." *Id.*

[1] As a preliminary matter, we consider Respondent's contention that the Chair of the Judicial Standards Commission, Court of Appeals Chief Judge John C. Martin, should have recused himself from the hearing conducted before the Commission. Before the hearing Respondent sent Chief Judge Martin a letter requesting the opportunity to discuss his service on Sonic's Board of Directors. Chief Judge Martin sent a letter in response indicating that further meetings would not "be of assistance in resolving the Sonic Auto situation." Chief Judge Martin's letter was transmitted after Respondent had already been advised that his continuing service on a corporate board violated Canon 5C(2) of the Code.

"Public confidence in the courts requires that cases be tried by unprejudiced and unbiased judges." *In re Martin*, 295 N.C. 291, 306, 245 S.E.2d 766, 775 (1978) (citation omitted). To satisfy the standard for recusal, the moving party must " 'demonstrate objectively that grounds for disqualification actually exist.' " *State v. Fie*, 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987) (citations omitted). Such a showing requires " 'substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially.' " *Id.*

At the hearing Respondent did not raise any objection to Chief Judge Martin's participation. Chief Judge Martin's letter does not demonstrate bias, especially since this Court, and not the Commission, creates and interprets the Code. If bias can be contrived by the mere act of sending a letter to a member of the Commission, and receiving a response, then it is foreseeable that a judge could send letters to each member of the hearing panel to create the appearance of bias. Respondent's preliminary argument fails.

**[2]** Turning to the merits, we first consider Respondent's argument that the entire proceeding should be dismissed because the Commission did not make findings of fact supported by "clear, cogent and convincing evidence." Respondent states that this Court has not rendered a decision defining "clear, cogent and convincing." Therefore, Respondent claims that the Commission had no basis upon which to make any recommendation to this Court.

Rule 18 of the Rules of the Judicial Standards Commission provides that "Commission Counsel shall have the burden of proving the existence of grounds for a recommendation of discipline by clear, cogent and convincing evidence, as that term is defined by the Supreme Court." Jud. Standards Comm'n R. 18, para. 3, 2010 N.C. R. Ct. (State) 443, 448. Under this rule Commission Counsel must demonstrate a fact by "clear, cogent and convincing evidence." *Id.* However, there is no distinction between "clear, cogent and convincing" and "clear and convincing" evidence. *See, e.g., In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) ("It is well established that 'clear and convincing' and 'clear, cogent, and convincing' describe the same evidentiary standard." (citation omitted)).

After review of the record and the transcript, we conclude that the Commission properly applied the "clear, cogent and convincing" evidentiary standard. Respondent's argument is without merit.

**[3]** We next consider Respondent's argument that the Canon 5C(2) prohibition on corporate board membership is only a "suggestion or guide."

Canon 5C(2) states that a judge "should not serve as an officer, director or manager of any business." Code of Jud. Conduct Canon 5C(2), 2010 N.C. R. Ct. (State) 437, 440. Canon 5C(1) states:

> A judge *should* refrain from financial and business dealings that reflect adversely on the judge's impartiality, interfere with the proper performance of the judge's judicial duties, exploit the judge's judicial position or involve the judge in frequent transactions with lawyers or persons likely to come before the court on which the judge serves.

*Id.* Canon 5C(1), 2010 N.C. R. Ct. (State) at 440 (emphasis added). Canon 5C(2) is "[s]ubject to the *requirements* of [Canon 5C(1)]." *Id.* Canon 5C(2) (emphasis added). Because the term "should" in Canon 5C(1) is referred to as a "requirement" in 5C(2), the use of the word "should" in Canon 5C(2) creates a mandatory prohibition. Accord-

ingly, the Canon 5C(2) prohibition against serving on corporate boards is mandatory, and Respondent is subject to discipline for his violation of that Canon.

Having concluded that the prohibitions in Canon 5C(2) are mandatory, we observe that the minimal standards embodied in the Code would be severely weakened if "should" were given a permissive meaning. Construing "should" as permissive would allow judges to "practice law" (Canon 5F), "solicit funds on behalf of a political party" (Canon 7C(1)), and join "organizations that practice[] unlawful discrimination" (Canon 2C) since all these prohibitions say "should not" instead of "shall not." Barring judges from serving on corporate boards not only eliminates one potential conflict of interest that may hinder judicial independence, but also avoids the perception of judicial bias.

We also agree with the Commission's conclusion that Respondent's continuing membership on the Sonic Board, after being told that he could not do so, violated Canons 1 and 2A, constituted willful misconduct while in office, and is conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

[4] We next consider Respondent's argument that the Commission lacked jurisdiction to discipline him for alleged misrepresentations he made during the Commission's investigation. Respondent bases his argument on the fact that the statement of charges does not allege intentional misrepresentation. Respondent contends the Commission's failure to amend the statement of charges stripped the Commission of jurisdiction to hear or rule on that allegation.

Before completion of a disciplinary hearing, the Commission's hearing panel "may allow or require amendments to the Statement of Charges . . . . to conform to the proof or to set forth additional facts." Jud. Standards Comm'n R. 16, 2010 N.C. R. Ct. (State) at 448. "In the event of an amendment setting forth additional facts, the respondent judge shall be given a reasonable time to answer the amendment and to prepare and present his or her defense to the matters charged thereby." *Id.*

While the better practice would have been for the Commission to file an amended statement of charges, we nevertheless find that Respondent's argument lacks merit. Although the Commission found, without making a formal charge, that Respondent intentionally misrepresented himself, the Commission in no way violated Respondent's due process rights since it offered him the opportunity to ex-

plain the misleading statements during the hearing. *See In re Greene*, 328 N.C. 639, 648, 403 S.E.2d 257, 262 (1991) ("Here respondent was accorded an adequate and fair hearing, was apprised of all material evidence received and relied on by the Commission and given opportunity to test, explain and rebut it."). Moreover, the veracity of witnesses who testify before the Commission and participate in the Commission's investigations may always be considered by this Court in its assessment of credibility and determination of appropriate discipline. *See, e.g., In re Stephenson*, 354 N.C. 201, 205, 552 S.E.2d 137, 139 (2001) ("We consider the evidence and then exercise independent judgment as to whether to censure, to remove, or to decline to do either." (citation omitted)).

During the investigation Respondent informed both Mr. Ross and Mr. Joyner that he received his health insurance from Sonic when in fact Respondent knew that he did not receive insurance from this company. The investigation revealed that he actually received health insurance in his capacity as director emeritus of Monroe Hardware.

Therefore, the Commission's findings of fact related to Respondent's misrepresentations support its conclusion of law on this issue. Respondent's intentional misrepresentations to Mr. Ross and Mr. Joyner violated Canons 1 and 2A, constituted willful misconduct while in office, and demonstrated conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

[5] We now consider Respondent's argument that his confrontation with Chief Judge Bell did not constitute a valid basis for discipline.

Respondent argues that the Commission failed to show by clear and convincing evidence that his actions merited discipline. He concedes that during his confrontation with Chief Judge Bell, he probably raised his voice and used inappropriate language. However, he maintains that after this isolated incident, his relationship with Judge Bell returned to normal.

Canon 3A(3) states that "[a] judge should be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in the judge's official capacity, and should require similar conduct of lawyers, and of the judge's staff, court officials and others subject to the judge's direction and control." Code of Jud. Conduct Canon 3A(3), 2010 N.C. R. Ct. (State) at 438.

Standing alone, Respondent's words and actions during the confrontation with Judge Bell did not necessarily merit a recommenda-

tion of discipline by the Commission. While a district court judge must respect the Chief District Court Judge's duties and authority, the nature of the relationship between coworkers may at times produce episodes of contention, disagreement, and frustration. Despite the inappropriate nature of Respondent's actions during his confrontation with Chief Judge Bell, discipline is' not normally imposed for a single incident of improper behavior exhibited towards a coworker. *See In re Bullock*, 324 N.C. 320, 322, 377 S.E.2d 743, 744 (1989) ("Not every intemperate outburst of a judge, especially when it is an isolated, single event, occurring in the privacy of the judge's office and brought on by what the judge might reasonably have perceived to be some provocation, amounts to conduct deserving of discipline."). Accordingly, the Commission's findings of fact do not support its conclusion that Respondent's behavior towards Chief Judge Bell violated Canons 1, 2A, and 3A(3) or N.C.G.S. § 7A-376.

**[6]** In summary, we conclude that Respondent's actions and misrepresentations as a whole, excluding his confrontation with Chief Judge Bell, demonstrated willful misconduct in office in violation of N.C.G.S. § 7A-376(b). Respondent violated Canons 1, 2A, and 5C(2) by failing to resign from the Sonic Board and by intentionally misrepresenting the reasons for his continued membership on the board during the Commission's investigation. Respondent continued to serve on the Sonic Board for over nine months after his installation to judicial office. Taken as a whole, Respondent's actions, misrepresentations, and willful violation of Canon 5C(2) are sufficiently egregious to warrant removal from office.

Although Respondent indicates that he has now resigned his office, "[t]he resignation of a judge and its acceptance by the Governor neither deprives this Court of jurisdiction over a proceeding for removal nor limits the sanctions available." *In re Renfer*, 347 N.C. 382, 384, 493 S.E.2d 434, 435 (1997) (citation omitted). Accordingly, we agree with the Commission's recommendation that Respondent be removed from judicial office.

It is hereby ordered by the Supreme Court of North Carolina in conference that Respondent, William I. Belk, be and is hereby, officially removed from office as a judge of the General Court of Justice, District Court Division, Judicial District Twenty-Six of the State of North Carolina, for conduct in violation of Canons 1, 2A, and 5C(2) of the North Carolina Code of Judicial Conduct and for willful misconduct in office and conduct prejudicial to the administration of justice

that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). In consequence of his removal, Respondent is disqualified from holding further judicial office and is ineligible for retirement benefits. N.C.G.S. § 7A-376(b).

Chief Justice PARKER did not participate in the consideration or decision of this case.