IN THE SUPREME COURT OF NORTH CAROLINA

No. 86A26

Filed 22 May 2026

IN RE INQUIRY CONCERNING A JUDGE, NO. 25-148

SEAN A. COLE, Respondent

This matter is before this Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 18 March 2026 that Respondent Sean A. Cole, a Judge of the General Court of Justice, Superior Court Division, Judicial District 10, be censured for conduct in violation of Canons 1, 2A, and 5F of the North Carolina Code of Judicial Conduct for conduct prejudicial to the administration of justice that brings the judicial office into disrepute and willful misconduct in office in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 16 April 2026 but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2 of the Rules of Procedure in the Supreme Court in Judicial Standards Cases.

*No counsel for Judicial Standards Commission or respondent.*

PER CURIAM.

The issue before the Court is whether Superior Court Judge Sean A. Cole, respondent, should be censured for violations of Canons 1, 2A, and 5F of the North

Carolina Code of Judicial Conduct—violations which amounted to conduct prejudicial to the administration of justice, which brought the judicial office into disrepute and constituted willful misconduct in office in violation of N.C.G.S. § 7A-376.

## I.    Recommendation of the Judicial Standards Commission

### A.  Findings of Fact

The recommendation of the North Carolina Judicial Standards Commission (Commission) contained the following stipulated findings of fact:

> 1. Respondent filed as a Democratic candidate for Superior Court Judicial Seat 10C by the December 15, 2023, state-wide filing deadline. On November 5, 2024, Respondent won in a contested election against the incumbent, Judge Rebecca "Becky" Holt, who had filed as a Republican.
>
> 2. Before being elected to the superior court bench, Respondent was a solo practitioner who represented plaintiffs in personal injury and related cases. Respondent usually carried a caseload of approximately forty cases but wound down to approximately twenty-five cases by the time the election occurred. Beyond decreasing his caseload, Respondent failed to make sufficient plans for winding down his law practice or transferring his remaining cases should he prevail in his election.
>
> 3. On November 26, 2024, Respondent spoke with the Commission's Executive Director, Ms. Brittany Pinkham, and received guidance on how to transition from his solo practice to the superior court bench.
>
> 4. On December 25, 2024, Respondent emailed a Secondary Employment Form to the Administrative Office of the Courts' ("AOC") Human Resources department listing his law practice as his secondary employment. Respondent indicated in his email, "Just for clarification, I'm not taking any new clients, and am just planning to keep the firm open until I have resolved some outstanding liens and disbursed

all money held in trust," which he anticipated being done by June 2025. On December 27, 2024, Respondent received additional advice from Ms. Pinkham regarding this Secondary Employment Form, where she again advised him not to do additional legal work after taking his oath of office.

5. Despite the advice he had been given, Respondent nonetheless took his judicial oath of office on January 1, 2025, to start the clock on earning time for his judicial retirement even though he still had twelve outstanding cases remaining in his solo practice where he was still listed as counsel of record in court filings and on the eCourts Portal.

6. During the week of January 13, 2025, Respondent had a case appearing on the Wake County Superior Court Civil Trial Calendar in which he was still counsel of record. Respondent asked District 10 Court Manager Kellie Myers and District 10 Senior Resident Superior Court Judge Paul Ridgeway for advice and was advised by both that he needed to stop practicing law. Nonetheless, Respondent proceeded to file alias and pluries summonses and a motion to continue for the case and contemplated appearing at calendar call.

7. During the week of January 27, 2025, Respondent attended the New Superior Court Judges' Training at the University of North Carolina School of Government where he again received training from the Commission regarding his obligations under the Code of Judicial Conduct, including his duty not to practice law and to properly wind up his law practice.

8. On Sunday, February 2, 2025, at 7:52 pm, Respondent sent Ms. Pinkham a text message requesting permission to file a complaint in a case ("the Complaint Case") on behalf of a client whose statute of limitations had "creeped up on [him]" and then "almost immediately" withdraw and transfer the matter to alternate counsel. Ms. Pinkham responded that Respondent could file the complaint, given the circumstances, as long that he did not collect additional

fees and "immediately" withdrew. That same evening, Ms. Pinkham received a phone call from Commission Chair Jeff Carpenter regarding the feasibility of her advice to Respondent. As such, Ms. Pinkham spoke with Respondent by phone the next day, expressed the Commission's concerns regarding him continuing to practice law, and stressed the need for him to "immediately" withdraw from the Complaint Case if another attorney was not in a position to file the complaint for him. Respondent and Ms. Pinkham spoke multiple times over the next several weeks regarding the Complaint Case, where the need for Respondent to wind up the matter was stressed and he was told that he was acting outside of the scope of his February 2, 2025, advisory opinion given that he had not withdrawn from the matter "immediately" as he had said. During these conversations, Respondent mentioned other cases that made it clear that the Complaint Case was not the only case he still had pending as counsel.

9. On February 11, 2025, Commission staff had former Commission member and current State Bar Councilor and District 3 Senior Resident Superior Court Judge Jeff Foster, who similarly wound down a solo legal practice before taking the bench, reach out to Respondent to counsel him regarding winding up his law practice generally and facilitating his withdrawal from the Complaint Case. Ms. Pinkham wrote Respondent a follow-up advisory opinion the next day.

10. Throughout February 2025, Respondent filed alias and pluries summonses, motions to withdraw, and voluntary dismissals in multiple cases while actively communicating with Ms. Pinkham about the Complaint Case. Further, on Friday, February 28, 2025, Respondent visited a client in the Franklin County Jail.

11. On March 13, 2025, Ms. Pinkham received an inquiry from the Assistant AOC Director's Office about whether Respondent was allowed to be assigned to court, as they had received reports that Respondent was actively practicing law and, when individuals expressed concern about his practice, had indicated that he was doing so with

the Commission's permission. The Assistant AOC Director's Office removed Respondent from court temporarily to allow him to finish winding up his law practice.

12. On March 18, 2025, after being notified of the initiation of the Commission's formal investigation into his failure to wind up his law practice, Respondent requested that District 10 Court Assistant Shanda Smallwood have Judge Ridgeway sign his motion to withdraw in one of his cases as counsel despite her informing him that the motions failed to comply with the local rules. Ms. Smallwood felt pressured by Respondent in this interaction.

13. Respondent finally withdrew from the Complaint Case on March 27, 2025.

14. Respondent finally resolved his other outstanding cases as counsel on April 8, 2025.

(Alteration in original.)

## B. Conclusions of Law

Based upon the foregoing findings of fact, the Commission made the following conclusions of law:

1. Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "a judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2. Canon 2A of the Code of Judicial Conduct generally mandates that "a judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Canon 5F of the Code of Judicial Conduct mandates that "a judge should not practice law."

4. Upon the Commission's independent review of the stipulated facts concerning Respondent's conduct related to his law practice, the Commission, by a 6–1 vote of the hearing panel concludes that Respondent:

    a. failed to participate in establishing, maintaining, and enforcing, and personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved[ ] in violation of Canon 1 of the Code,

    b. failed to respect and comply with the law and conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A of the Code, and

    c. practiced law while serving as a judge in violation of Canon 5F of the Code.

5. The Commission further concludes, and accepts Respondent's admission, by a 6–1 vote of the hearing panel, that the facts establish Respondent engaged in willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of N.C. Gen. Stat. § 7A-376(b). *See also* Code of Judicial Conduct, Preamble ("a violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute."). *Id.*

6. The North Carolina Supreme Court defined "willful misconduct in office" as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Edens*[,] 290 N.C. 299, 305 (1976). The Supreme Court further held in *In re Nowell*, 293 N.C. 235 (1977), while willful misconduct in office necessarily encompasses "conduct involving moral turpitude, dishonesty, or

corruption," it also can be found based upon "any knowing misuse of the office, whatever the motive." *Id.* at 248. The Supreme Court further held "these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith." *Id.*

7. In reaching this conclusion, the Commission weighed the Respondent's conduct of failing to adequately plan for and wind down his law practice despite advice by multiple entities versus his cooperation with the Commission, the remedial measures taken by Respondent to prioritize his judicial responsibilities, and his positive reputation as an attorney.

8. The Commission was concerned with Respondent's decision to take his oath of office on January 1, 2025, despite having twelve outstanding cases and receiving advice to the contrary. When coupled with Respondent's continued conduct once a sitting judge, such as having a case appear on the Superior Court trial calendar where Respondent still appeared as attorney of record in Respondent's own jurisdiction, requesting permission from Commission staff to file a complaint on behalf of a client due to Respondent allowing the statute of limitations to lapse prompting concern from Commission staff, Respondent filing numerous summons, motions to withdraw, and voluntary dismissals on multiple cases while in active communication with Commission staff, Respondent asking an employee in the District 10 judge's office to put forth his deficient motions to withdraw to Senior Resident Superior Court Judge Paul Ridgeway, and withdrawing from his outstanding cases four months after taking the bench, the Commission was troubled by the impact that Respondent's conduct had on the public's confidence in the integrity and impartiality of the judiciary.

9. However, the Commission acknowledged that

Respondent otherwise was cooperative with the Commission's investigation, took appropriate remedial measures to ensure the prioritization of his judicial responsibilities, and has no prior disciplinary history with the Commission as well as a positive record of service in the legal profession and community.

10. In considering these factors, the Commission determined that more severe punishment was needed for Respondent; however, the Commission also acknowledged that the conduct at issue did not rise to the level of previous public disciplines that resulted in suspensions without pay. *See In re Badgett*, 362 N.C. 202 (2008) (where the respondent judge was suspended for sixty[ ]days for failing to disclose a landlord-tenant relationship with a local attorney and attempting to pressure the elected DA into signing a remittal of disqualification, then threatened to sue and was generally rude to area attorneys after receiving notice of his investigation by the Commission); *In re Hartsfield*, 365 N.C. 418 (2012) (where the respondent judge was suspended for forty-five days for transferring traffic court cases onto her docket and disposing of them in contradiction to the DA's office's policy); *In re [Chapman]*, 371 N.C. 486 ([2018]) (where the respondent judge was suspended for thirty days for delaying his order in a family law case for over five years); *In re Brooks*, 377 N.C. 146 (2021) (where the respondent judge was suspended for thirty days for serving as the executor for two former clients' estates who were not his family members, collecting substantial fees, then failing to report his extra-judicial income); *In re Foster*, 385 N.C. 675 (2024) (where the respondent judge was suspended for one hundred twenty days for (1) calling an out[-]of[-]county magistrate's office and attempting to bully a magistrate into reducing her son's bond by misleading her and without disclosing their familial relationship and (2) bullying a magistrate and ADA out of their administrative courtroom for her own use, causing more than one hundred cases to be continued unnecessarily).

11. As a result, the Commission concludes, and Respondent agrees, that a censure in this matter would be most appropriate given the Supreme Court's prior public disciplinary opinions.

12. The North Carolina Supreme Court in *In re Crutchfield*, 289 N.C. 597 (1975)[,] first addressed sanctions under the Judicial Standards Act and stated that the purpose of judicial discipline proceedings "is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges."

13. The Commission and Respondent acknowledge the ultimate jurisdiction for the discipline of judges is vested in the North Carolina Supreme Court pursuant to Chapter 7A, Article 30 of the North Carolina General Statutes, which may either accept, reject, or modify any disciplinary recommendation from the Commission.

(Cleaned up.)

## C. Recommendation

Based on the foregoing findings of fact and conclusions of law, the Commission, by 6–1 vote of the hearing panel, recommended that the Court censure Respondent.

## II.   Analysis

The Commission is duly organized under Article IV, Section 17 of the North Carolina Constitution and Chapter 7A, Article 30 of the General Statutes of North Carolina to recommend to this Court the public discipline of any judge and justice for any reason set forth in N.C.G.S. § 7A-376(b). The Code of Judicial Conduct was established in furtherance of "[a]n independent and honorable judiciary," which is "indispensable to justice in our society." N.C. Code of Jud. Conduct, pmbl. A violation

of the Code may be deemed conduct prejudicial to the administration of justice where that violation brings the judicial office into disrepute, constitutes willful misconduct in office, or is grounds for disciplinary proceedings pursuant to Article 30 of Chapter 7A of the General Statutes. *Id.* For such violations, the Commission conducts a hearing, which is "neither a civil nor a criminal action." *In re Nowell*, 293 N.C. 235, 241 (1977).

When reviewing the Commission's recommendations, this Court acts as a court of original jurisdiction rather than as an appellate court. *In re Badgett*, 362 N.C. 202, 207 (2008). "[T]his Court must first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law." *Id.* This Court has the authority to issue a public reprimand, censure, suspension, or removal of a judge "for willful misconduct in office, willful and persistent failure to perform the judges' duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *In re Foster*, 385 N.C. 675, 689–90 (2024) (quoting N.C.G.S. § 7A-376(b) (2023)). In considering the appropriate sanction, we look "not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *In re Edens*, 290 N.C. 299, 306 (1976) (quoting *In re Crutchfield*, 289 N.C. 597, 603 (1975)).

We have defined willful misconduct as "the improper or wrongful use of the

power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith." *In re Nowell*, 293 N.C. at 248. We explained that "[n]ecessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive . . . these elements are not necessary to a finding of bad faith." *Id.* Additionally, this Court has explained that willful misconduct constitutes more than an error of judgment or an act of negligence. *Id.*; *In re Stuhl*, 292 N.C. 379, 389 (1977). A judge may, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. *In re Nowell*, 292 N.C. at 248–49 (citation omitted). "Likewise, a judge may also commit indiscretions, . . . which nonetheless bring[ ] the judicial office into disrepute." *Id.* at 249.

In *In re Nowell*, we explained, a district court judge fulfills "a most important role in our judicial system" due to his or her handling of more cases than any other judge and wielding great power in the exercise of his or her court's jurisdiction. *Id.* at 251–52. We explained that district court judges exercise power "over the lives and everyday affairs of our citizens," making it imperative they be "dedicated to carrying out their official responsibilities in accordance with the law and established standards of judicial conduct." *Id.* at 252.

While we recognize that district court judges confront more voluminous caseloads than superior court judges, trial court judges as a collective body serve as

-11-

the face of the judiciary to the public. We have reiterated that "[t]he integrity of [judicial] office requires that its holder project nothing less than the high standards of character and rectitude citizens should expect from their judges." *In re Badgett*, 362 N.C. at 210. The "requirements of the Rule of Law subject the judiciary to intense and ever greater scrutiny by our citizens, the demands of [a judge's] judicial office require[ ] him to comport himself with dignity, reserve, and probity." *Id.* Public confidence in the independence, impartiality and integrity of the judiciary depends on a judge's conduct, especially in the courtroom. *See In re Mack*, 369 N.C. 236, 246–49 (2016) (adopting the Commission's conclusions of law explaining a judge should have considered the propriety of presiding over a personal criminal matter and the conflict of interest and potential for public concern in presiding over a case in which he had financial interest); *In re Martin*, 295 N.C. 291, 306 (1978) ("Public confidence in the courts requires that cases be tried by unprejudiced and unbiased judges."). There can be no room for doubt as to a judge's ability to be impartial and maintain the integrity of the judicial system—a judge's conduct should "objectively and reasonably convey[ ] a clear separation of the judge's private interests from his judicial duties." *In re Mack*, 369 N.C. at 246; *see also In re Cornelius*, 255 N.C. 198, 207 (1993) (concluding superior court judge violated Canon 2A for using his position to assist a county employee in an employment matter based on a personal relationship, which conveyed "the impression that [the employee] had special influence with him").

After reviewing the record and stipulated facts, we conclude the Commission's findings are supported by clear and convincing evidence, and we adopt them as our own. The Commission's conclusions of law are supported by those facts, thus we also adopt the Commission's conclusions of law. By extension, we agree with the Commission's conclusions that respondent's conduct violates Canons 1, 2A, and 5F of the North Carolina Code of Judicial Conduct.

Because respondent has violated Canons 1, 2A, and 5F of the North Carolina Code of Judicial Conduct and N.C.G.S. § 7A-376(b), we must now decide whether to accept the Commission's recommendation of censure. Our guidepost for determining the appropriate sanctions is the impact of the respondent's conduct on public confidence in our judicial system and ensuring the honor and integrity of judges who serve the people of this State. *See In re Crutchfield*, 289 N.C. at 602.

Censure is appropriate where "a judge has willfully engaged in misconduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-374.2(1) (2025). In recognizing that respondent in this case was otherwise cooperative and had a positive reputation and professional record, we deem it may be instructive to review in some detail where this Court has decided to censure a judge.

In *In re Belk*, this Court agreed with the Commission's conclusion that a judge's conduct of continuing his membership on a corporate board, after being told that he could not do so, violated Canons 1 and 2A, constituted willful misconduct while in

-13-

office, and was conduct prejudicial to the administration of justice which brings the judicial office into disrepute. 364 N.C. 114, 124 (2010).

In *In re Badgett*, this Court censured a judge for failure to disclose or recuse from cases due to a business relationship with an attorney appearing before him, and noted three particularly inappropriate actions: (1) his participation in the preparation of a remittal of disqualification, despite provisions of the Code to the contrary; (2) his untruthful statements concerning the state of the Commission's investigation and the opinions purportedly tendered by the Commission; and (3) his use of threats and the power of his office against a district attorney during an exchange in his courtroom. 362 N.C. at 209–10. We noted that the inappropriate use of the judicial office and its powers was particularly concerning. *Id.* at 210.

In *In re Murphy*, this Court censured a judge for failing to take corrective action to prevent an employee's misconduct and sexual harassment within the judge's chambers despite the judge being made aware of the misconduct through his employees and through the Administrative Office of the Courts' Human Resources Department. 376 N.C. 219, 239–40 (2020). Additionally, the judge dismissed or ignored his staff's concerns regarding the severity of the employee's misconduct, engaged in vindictive behaviors, and allowed his personal relationship with the employee to not only influence his judgment but to violate his duties under the Code. *Id.* at 239–41.

In contrast, in *In re Brooks*, we departed from the Commission's

recommendation for censure and opted to suspend a judge where he served as executor for the estates of two former clients that were not members of the respondent's family, collected substantial fees or commissions for such service, and failed to properly report that income in violation of Canons 1, 2A, 5D, and 6C. *In re Brooks*, 377 N.C. 146, 147–48 (2021). There, the judge cooperated, admitted error, and showed remorse for conduct that appeared to be a single event as opposed to a pattern of recurring misconduct. *Id.* at 154; *see also In re Bullock*, 324 N.C. 320, 322 (1989) (rejecting recommendation for censure where judge's conduct occurred in an isolated, single event in private).

A common thread amongst the cases in which we have recommended censure is recurring misconduct despite the respondents' awareness or acknowledgment of their alleged violations of the Code. Similarly, respondent in this case knowingly continued to practice law as a sitting judge in violation of the Code and acted outside the scope of the Commission's advisory opinion as to the Complaint Case. Winding down a solo practice is no simple feat, and a practicing solo attorney must ensure that his clients are not left without representation. However, respondent was obviously on notice that if he won his election, he would need to wind down his practice. When respondent took the judicial oath of office on 1 January 2025, respondent still had twelve outstanding cases. Once he learned that he won his judicial election and even after he took his oath, respondent had an obligation to wind down his practice in an orderly and ethical manner. The Commission had given him the necessary time and

guidance to allow him to do so in addition to having a former Commission member and once-similarly situated judge reach out to respondent to counsel him on winding down his practice and withdrawing from the Complaint Case. However, as a sitting judge, respondent appeared as attorney of record in his own jurisdiction, and filed numerous summonses, motions to withdraw, and voluntary dismissals in multiple cases. He did so while in active communication with Commission staff in which he was made aware that he was not to practice law, that he was to wind down his practice immediately, and that he was to find replacement counsel for his outstanding cases. Respondent took four months to end all representation.

Nearly every state has adopted some form of Rule 3.10 of the American Bar Association's Model Code of Judicial Conduct, including North Carolina in Canon 5F of the Code, which provides, "A judge shall not practice law." N.C. Code of Jud. Conduct, Canon 5F; *see also* Model Rules of Pro. Conduct r. 3.10 (A.B.A. 2020). The same ABA rule provides a judge may "act pro se" and may give "legal advice to and draft or review documents for a member of the judge's family" but "without compensation." Model Rules of Pro. Conduct r. 3.10. Further, they are prohibited from representing a family member in any forum. *Id.* Based on that rule and our precedent in judicial standards cases, it can be inferred that the broader reasoning behind the prohibition is to ensure judges avoid even the appearance of impropriety, meaning the use of their position or power in a manner that would make a reasonable person question whether the judge can be impartial. Additionally, judges are to avoid

conflicts of interest, and they must not use their position for personal advantages or to advance personal interests. Such conduct would undermine public confidence and have an impact on the integrity of the legal system. Judges, due to their position in the legal profession and in society, are held to a high standard, and this Court is tasked to hold them accountable to that standard.

It is troubling that respondent asked a court employee in his jurisdiction to put forth his deficient motions to withdraw to the Senior Resident Superior Court Judge, which could be interpreted or perceived as a misuse of one's position to pressure court personnel or staff. Furthermore, a sitting judge continuing to appear as an attorney in their own jurisdiction is especially concerning due to the impact the judge's representation could have on the public's confidence in the integrity and impartiality of the judiciary.

However, we do note that respondent was otherwise cooperative with the Commission's investigation, eventually took appropriate remedial measures, and has no prior disciplinary history with the Commission. In other words, respondent was in good professional standing within the legal community and with the State Bar. Weighing respondent's misconduct against his acknowledgement and cooperation, we conclude that the Commission's recommendation of censure is appropriate and supported by the Commission's findings of fact and conclusions of law.

The Supreme Court of North Carolina orders that respondent Sean A. Cole be CENSURED for conduct in violation of Canons 1, 2A, and 5F of the North Carolina

Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute and willful misconduct in office in violation of N.C.G.S. § 7A-376(b).

Justice BERGER concurring.

I concur with the per curiam opinion approving the Commission's recommendation of censure but write separately to address language in prior opinions which suggests that this Court has independent authority to discipline judges. The Judicial Standards Commission and this Court have specifically defined roles in our system of judicial disciplinary proceedings. In this sphere, both constitute regulatory authority and operate pursuant to express delegations by the General Assembly.

The General Assembly's authority over judicial discipline comes from the people. *See* N.C. Const. art. IV, § 17(2) ("The General Assembly shall prescribe a procedure . . . for the censure and removal of [a judge or justice] for . . . wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."). Pursuant to this constitutional provision, the General Assembly has specifically delegated to the Judicial Standards Commission the authority to initiate investigations concerning the qualifications or conduct of judicial officers. *See* N.C.G.S. § 7A-377(a) (2025). In general terms, when an investigation reveals misconduct, the Commission issues its recommendation to this Court for disciplinary action. N.C.G.S. § 7A-377(a5) (2025).

-19-

In turn, the General Assembly delegated to this Court the authority to review recommendations of discipline from the Judicial Standards Commission. *See* N.C.G.S. § 7A-376(b) (2025). Specifically, "[u]pon recommendation of the Commission, the Supreme Court may issue a public reprimand, censure, suspend, or remove any judge for willful misconduct in office, willful and persistent failure to perform the judge's duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Id.* The phrase "upon the recommendation of the Commission" conditions this Court's authority to discipline on the recommendation.

The next section specifically and deliberately limits what can be done with a recommendation of discipline from the Commission: this Court "may approve the recommendation, remand for further proceedings, or reject the recommendation." N.C.G.S. § 7A-377(a5). That's it. Neither statute contemplates that the Court can exercise independent or inherent authority to impose a different form of discipline on its own motion.

But there is considerable tension between these explicit provisions, basic principles of administrative law, and this Court's jurisprudence on judicial discipline. Opinions from this Court have exceeded the authority delegated by the General Assembly and expanded this Court's reach beyond the statutorily prescribed boundaries. In a long line of cases, this Court has stated that "[i]n reviewing recommendations of the Commission, the Court acts as a court of original jurisdiction

and exercises independent judgment as to the disciplinary measures imposed on a judge." *In re Foster*, 385 N.C. 675, 690 (2024).

This jurisprudential aggrandizement appears to have begun in *In re Martin*, 295 N.C. 291 (1978). The Court there stated that "[i]t is well established that, in construing either the federal or State Constitution, what is implied is as much a part of the instrument as what is expressly stated." *In re Martin*, 295 N.C. at 299. *But see contra State ex rel. Martin v. Preston*, 325 N.C. 438, 449 (1989) ("[W]here the meaning is clear from the words used, we will not search for a meaning elsewhere."). The atextual interpretive method relied on in *Martin* allowed the Court to read past the plain text of Article IV, Sections 12 and 17 in favor of a theory that judicially assigned original jurisdiction over Judicial Standards Commission matters to this Court. This Court has repeatedly perpetuated the error, citing to precedent declaring that we "may . . . exercise independent judgment as to the appropriate sanction." *In re Foster*, 385 N.C. at 690.

But neither the text of our constitution nor the General Assembly's statutory delegation of authority has vested us with such discretion, and this Court is effectively exercising unbounded authority to discipline judges independent of the recommendations of the Commission. To the extent this Court's precedent and the per curiam opinion today suggest this Court has independent authority to fashion appropriate sanctions beyond that recommended by the Commission, I disagree. The constitutional and statutory provisions are clear: this Court may accept or reject the

Commission's recommendation or remand for further proceedings. *See* N.C.G.S. § 7A-377(a5). And even though this Court may have previously operated under a misapprehension of our authority, we should not hesitate to reverse course.